IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RONALD TATE, | ) | |
| | ) | |
| Movant/Defendant, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 12-918-GMS |
| | ) | Cr. A. No. 11-53-GMS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent/Plaintiff. | ) | |

**MEMORANDUM OPINION**

Ronald Tate. *Pro se* movant.

Lesley F. Wolf. Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Attorney for respondent.

Sept 10, 2015
Wilmington, Delaware

SLEET, United States District Judge

## I. INTRODUCTION

Movant Ronald Tate ("Tate") filed a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (D.I. 42) The government filed an answer in opposition. (D.I. 54) For the reasons discussed, the court will deny Tate's § 2255 motion without holding an evidentiary hearing.

## II. BACKGROUND

On November 22, 2010, the government charged Tate, by sealed criminal complaint, with mail fraud and wire fraud. (D.I. 2) Tate appeared in court for an initial appearance on December 6, 2010.

On December 10, 2010, the government filed an unopposed motion to exclude time under the Speedy Trial Act from that date through February 10, 2011, based on Tate's desire to cooperate. (D.I. 6) The Court granted the government's motion on December 14, 2010. The government filed a second unopposed motion to exclude time under the Speedy Trial Act on February 4, 2011, on the ground that Tate's cooperation was ongoing and would not be completed by February 10, 2011. (D.I. 7) The court granted that motion on February 7, 2011, and excluded time under the Speedy Trial Act through April 14, 2011. On April 7, 2011, the government filed a third unopposed motion to exclude time under the Speedy Trial Act through June 16, 2011, because Tate's cooperation was ongoing. (D.I. 9) The court granted the motion that same day.

On May 17, 2011, the government filed a two-count felony information against Tate, charging him with mail and wire fraud. (D.I. 11) On June 13, 2011, Tate waived indictment and

entered a plea of guilty to both counts, pursuant to a plea agreement with the government. (D.I. 13; D.I. 14)

Tate's sentencing was set for September 21, 2011, but was rescheduled for December 20, 2011 upon a joint motion by the parties. (D.I. 15; D.I. 17; D.I. 18) Tate sought to continue sentencing again on December 6, 2011. (D.I. 19) The government opposed this request and the court denied the motion, although the sentencing was moved to December 22, 2011 in order to accommodate the court's calendar. (D.I. 20; D.I. 22) The day prior to sentencing, Tate, who was represented by counsel, filed a *pro se* sentencing memorandum. (D.I. 24) The court held a hearing, and granted a brief continuance until January 10, 2012. On January 9, 2012, Tate filed a motion for appointment of new counsel, which the court granted. (D.I. 26) The court also set sentencing for March 21, 2012.

Prior to sentencing, and now represented by newly appointed counsel, Tate filed a *pro se* motion to withdraw his guilty plea, a *pro se* motion to dismiss the charges, and a *pro se* sentencing memorandum. (D.I. 31; D.I. 32; D.I. 33) During the sentencing hearing, Tate's counsel explained that he did not author and did not adopt any of Tate's *pro se* filings. (D.I. 41 at 3-4) The court explained that it would not consider Tate's *pro se* filings while he was represented by counsel. *Id.* The court conducted a colloquy with Tate, during which Tate confirmed that he would like to continue with counsel's representation as long as the court would consider the issues he raised in his *pro se* sentencing memorandum. (D.I. 41 at 5-6) The court agreed and stated that, although it would not consider Tate's *pro se* motions, it would view his sentencing memorandum as an "allocution of sorts." (D.I. 41 at 4-8) The court then proceeded with the sentencing hearing, and determined that the offense level for counts one and two under

2

the advisory sentencing guidelines was 20, and that Tate's criminal history category was I, producing a total advisory sentencing range of 33-41 months of imprisonment. (D.I. 41 at 14) The court then sentenced Tate to 24 months of imprisonment for each count, to run concurrently, followed by three years of supervised release for each count, to run concurrently. (D.I. 35)

### III. DISCUSSION

Tate asserts two claims in his timely filed § 2255 motion: (1) the attorney who represented him during the plea process ("defense counsel") provided ineffective assistance by coercing him to enter a guilty plea; and (2) defense counsel provided ineffective assistance by allowing the government to "extend the speedy trial clock" instead of seeking dismissal of his case. (D.I. 42 at 4-5)

Tate has properly raised his ineffective assistance of counsel allegations in a § 2255 motion. *See Massaro v. United States,* 538 U.S. 500 (2003). As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington,* 466 U.S. 668 (1984). Under the first ("performance") prong of the *Strickland* standard, Tate must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland,* 466 U.S. at 688. Under the second ("prejudice") prong of the *Strickland* standard, Tate must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Id.* at 694; *United States v. Nahodil,* 36 F.3d 323, 326 (3d Cir. 1994). Since Tate entered a guilty plea, he can only satisfy *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to

3

trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Finally, although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *Strickland,* 466 U.S. at 689.

### A. Claim One

In claim one, Tate contends that defense counsel coerced him to enter a guilty plea by failing to adequately explain the meaning of "aiding and abetting." (D.I. 42 at 4, 17) This argument does not warrant relief. As an initial matter, the court notes that Tate was not charged with, and did not plead guilty to, "aiding and abetting" with respect to any offense. Rather, he pled guilty to one count of mail fraud, in violation of 18 U.S.C. §§ 1341, 2, and one count of wire fraud, in violation of 18 U.S.C. §§ 1341, 2. (D.I. 13) Given these circumstances, claim one is factually baseless.

Moreover, even if the court were to construe claim one as alleging that defense counsel's overall actions coerced Tate into entering a guilty plea, the argument fails. It is well-settled that "[s]olemn declarations in open court carry a strong presumption of verity" creating a "formidable barrier in any subsequent collateral proceedings." *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Here, Tate's assertion of coercion is belied by his statements under oath on the record, as demonstrated by the transcript of his plea colloquy. For instance, during his plea colloquy, Tate responded "yes" when the court asked if the memorandum of plea agreement contained the entire agreement between Tate and the government. (D.I. 54-1 at 15-16) Tate also responded "no" when the court asked if anybody forced him to plead guilty. (D.I. 54-1 at 16) *Id.* Finally, Tate specifically agreed with the factual basis of his plea, (D.I. 54-1 at 28-32), and responded

4

"yes" when the court asked Tate if he was pleading guilty of his own free will because he was guilty of the offenses outlined in the information. *Id.* at 16. In short, Tate's entire plea colloquy undermines Tate's assertion of coercion.

The fact that Tate filed a *pro se* motion to withdraw his guilty plea nine months after entering his plea (i.e., on March 16, 2012) does not alter the court's analysis or its reliance on the statements Tate made during his plea colloquy. (D.I. 31) To begin, Tate's *pro se* motion to withdraw his guilty plea did not challenge the voluntariness of his guilty plea and did not raise any issues of coercion; rather, the motion sought to withdraw the guilty plea because of an alleged speedy trial violation. (D.I. 31) Second, three days after filing the motion to withdraw his guilty plea, Tate submitted a *pro se* sentencing memorandum in which he stated that he "is in no way attempting to withdraw his guilty plea." (D.I. 33 at 1-2) Finally, during the sentencing hearing, Tate essentially abandoned his motion to withdraw the guilty plea once the court reassured him that it would consider his *pro se* sentencing memorandum as part of his allocution.

Based on the foregoing, Tate's unsupported allegation regarding defense counsel's act of coercing him to plead guilty fails to provide compelling evidence as to why the statements he made during the plea colloquy should not be presumptively accepted as true. As such, the record confirms that Tate's guilty plea was knowing and voluntary.

In addition, Tate cannot satisfy the prejudice prong of the *Strickland* standard, because plea negotiated by defense counsel resulted in a much lower sentence than the possible maximum sentence of 30 years for each count. In exchange for his guilty plea, the government did not oppose a two-point reduction in Tate's offense level for his affirmative acceptance of responsibility, and the government also moved for an additional one point reduction for his

5

acceptance of responsibility. (D.I. 13 at 2-3) With all three points, the guideline range was 33-41 months. (D.I. 41 at 30) In contrast, without the third point, the guideline range would have been 37-46 months, and without any of the three points the guideline range would have been 46-57 months. *Id.* At the conclusion of the hearing, the court imposed a total sentence of 24 months of imprisonment.

In short, given the substantial benefit Tate derived from pleading guilty, he cannot demonstrate a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty if not for defense counsel's coercive behavior.

Accordingly, the court will deny claim one as meritless.

**B. Claim Two**

In claim two, Tate contends that counsel provided ineffective assistance by failing to move to dismiss the indictment on the grounds that continuing the prosecution was in violation of the Speedy Trial Act. Tate also alleges that defense counsel consented to the government's three motions to exclude time without his consent. For the following reasons, the court concludes that claim two does not warrant relief.

First, because Tate knowingly and voluntarily entered his guilty plea, he waived both statutory and constitutional speedy trial claims. *See* 18 U.S.C. § 3162(a)(2)("Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or *nolo contendere* shall constitute a waiver of the right to dismissal under this section."); *Washington v. Sobina*, 475 F.3d 162, 166 (3d Cir. 2007)(speedy trial rights are non-jurisdictional and are waived by voluntarily entering a plea of guilty).

6

Additionally, Tate's speedy trial claim is not supported by the record. The government filed three motions to exclude time because Tate had indicated his wish to cooperate with the government, and his ongoing cooperation had not been completed when the motions to exclude time were filed. (D.I. 6; D.I. 7; D.I. 9) The court only granted the government's motions after determining that the ends of justice served by the delay outweighed the best interest of the public and Tate in a speedy trial. In other words, Tate's underlying allegation that there was a speedy trial violation lacks merit, since the continuances in this case complied with the requirements of the Speedy Trial Act.

An attorney does not provide ineffective assistance by failing to raise meritless arguments or objections. *See United States v. Sanders,* 165 F.3d 248, 253 (3d Cir. 1999). Therefore, defense counsel was not ineffective for failing to file a meritless motion to dismiss Tate's indictment on speedy trial grounds.

Accordingly, the court will deny claim two as meritless.

## IV. EVIDENTIARY HEARING

A district court is not required to hold an evidentiary hearing on a motion filed pursuant to 28 U.S.C. § 2255 if the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth,* 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy,* 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. As previously discussed, the record conclusively demonstrates that Tate is not entitled to relief under § 2255. Therefore, the court concludes that an evidentiary hearing is not warranted.

7

## V. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate only if the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

The court is denying Tate's § 2255 motion after determining that his ineffective assistance of counsel claims lack merit. The court is persuaded that reasonable jurists would not find this assessment debatable. Therefore, the court will not issue a certificate of appealability.

## VI. CONCLUSION

The court concludes that Tate is not entitled to relief pursuant to 28 U.S.C. § 2255. An appropriate order will issue.